UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| MARK O.,<br><br>　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>　　Defendant. | **REPORT AND RECOMMENDATION TO AFFIRM THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:22-cv-00173<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

Mark O.[1] brought this action for judicial review of the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge ("ALJ") who addressed Mr. O.'s application determined he did not qualify as disabled.[3] Mr. O. asserts, without citation to record evidence, that the ALJ applied improper legal standards and his decision is unsupported by substantial evidence.[4] In response, the Commissioner contends Mr. O.'s arguments are so undeveloped as to be waived.[5] Because the record shows substantial evidence supports the ALJ's findings regarding Mr. O.'s residual functional capacity, and all other

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the plaintiff is referred to by his first name and last initial only.

[2] (*See* Compl., Doc. No. 2).

[3] (Certified Tr. of Admin. R. ("Tr.") 16–26, Doc. No. 18.)

[4] (*See* Opening Br., Doc. No. 19 at 4–6.)

[5] (*See* Answer Br. 3–4, Doc. No. 24.)

1

arguments are waived, the undersigned[6] recommends the district judge affirm the Commissioner's decision.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[7] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[8]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[9] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[10] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[6] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 7.)

[7] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[8] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[9] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[10] *Id.* at 103 (citation omitted).

[11] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[12]  And the court may not reweigh the evidence nor substitute its judgment for that of the ALJ.[13]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[14]  An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[15]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) he has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) he has the residual functional capacity to perform past relevant work; and

5) he has the residual functional capacity to perform other work, considering his age, education, and work experience.[16]

---

[12] *Lax*, 489 F.3d at 1084 (citation omitted).

[13] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[14] 42 U.S.C. § 423(d)(1)(A).

[15] *Id.* § 423(d)(2)(A).

[16] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden, in the first four steps, of establishing disability.[17] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[18]

## PROCEDURAL HISTORY

Mr. O. applied for disability insurance benefits under Title II of the Social Security Act[19] in August 2019.[20] He alleges he became disabled on April 4, 2019.[21] After an administrative hearing, the ALJ issued a decision on March 9, 2022, finding Mr. O. not disabled.[22]

At step two of the sequential evaluation, the ALJ found Mr. O. had the following severe impairments: "general anxiety disorder (GAD), major depressive disorder (MDD), attention deficit hyperactivity disorder (ADHD) - inattentive type, post-traumatic stress disorder (PTSD), cervical degenerative disc disease (DDD), lumbar DDD, residuals from left second metacarpal partial amputation, and residuals from left shoulder arthroscopic surgery."[23] The ALJ also found Mr. O. had nonsevere impairments

---

[17] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[18] *Id.*

[19] 42 U.S.C. §§ 401–434.

[20] (*See* Tr. 16.)

[21] (*See id.*)

[22] (Tr. 16–26.)

[23] (Tr. 18.)

4

including dermatitis and "residuals from COVID-19."[24] At step three, the ALJ found Mr. O.'s impairments did not meet or medically equal an impairment listing.[25]

The ALJ then found Mr. O. had the residual functional capacity to perform light work with the following limitations:

> [N]o reaching overhead to the left (non-dominant), and no more than frequent reaching in all other directions with the left arm. He can do no more than frequent fingering or handling with the left hand (non-dominant). He can do no more than occasional crawling, can frequently climb ramps, stairs, and ladders, but not ropes or scaffolds. The claimant can never work at unprotected heights nor operate a motor vehicle. He is able to perform simple, routine and repetitive tasks. He is able to occasionally interact with supervisors and coworkers; he can work in proximity to others, but would work alone, not on a team. He is able to interact superficially with the public.[26]

At step four, the ALJ found Mr. O. unable to perform his past relevant work.[27] But at step five, after considering the testimony of a vocational expert, the ALJ found Mr. O. could perform other work in the national economy.[28] Therefore, the ALJ found Mr. O. not disabled and denied his claim.[29]

The Appeals Council denied Mr. O.'s request for review of the partial denial of his claim,[30] making the ALJ's decision final for purposes of judicial review.

---

[24] (*Id.*)

[25] (Tr. 19–21.)

[26] (Tr. 22.)

[27] (Tr. 24–25.)

[28] (Tr. 25–26.)

[29] (Tr. 26.)

[30] (Tr. 1–4.)

## ANALYSIS

In his opening brief, Mr. O. asserts the ALJ "applied improper legal standards" and his decision "is not supported by substantial evidence."[31] Mr. O. argues "evidence" from various providers shows he "meets the requirements for disability under Section 404.1545 residual functional capacity."[32] Mr. O. also mentions various diagnoses and test results, as well as his own testimony and a function report completed by his mother.[33] But Mr. O. fails to support his arguments with citations to record evidence.

The Commissioner contends Mr. O.'s arguments are so undeveloped, they are waived, noting Mr. O. does not cite to legal authority or the record in support of any argument.[34] Alternatively, the Commissioner argues substantial evidence supports the ALJ's decision.[35]

A. <u>Waiver</u>

A court may consider an argument waived if a claimant fails to develop it, because this failure does not allow for meaningful review.[36] "[C]ursory statements,

---

[31] (Opening Br., Doc. No. 19 at 4.)

[32] (*Id.* at 4–5.)

[33] (*Id.* at 5–6.)

[34] (*See* Answer Br. 3–4, Doc. No. 24.)

[35] (*See id.* at 4–10.)

[36] *See Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) ("The 'perfunctory presentation' of Claimant's argument concerning her residual physical capacity 'deprived [the district] court of the opportunity to analyze and rule on this issue now raised in detail for the first time on appeal.'" (alteration in original) (quoting *Tele-Commc'ns, Inc. v. Comm'r of Internal Revenue*, 104 F.3d 1229, 1234 (10th Cir. 1997))); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (finding "perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review").

without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid" waiver.[37] In the social security context, courts have deemed arguments waived where claimants fail to cite the record or develop the arguments in a coherent manner.[38]

    Here, Mr. O. does not adequately identify his contentions of error, and his arguments are difficult to discern. In the opening brief's argument section, Mr. O. twice mentions residual functional capacity (RFC), and the only legal authority he cites is a regulation describing the RFC assessment.[39] While it appears Mr. O. is attempting to challenge the ALJ's RFC assessment, he makes only conclusory statements. For instance, Mr. O. states that the ALJ's decision is "not supported by substantial evidence,"[40] then mentions various medical records, diagnoses, and other evidence— but he fails to include citations to the record where this evidence may be found.[41] Mr.

---

[37] *Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007).

[38] *See Sean T. W. v. Saul*, No. 19-CV-645, 2021 U.S. Dist. LEXIS 56894, at *13 n.5 (N.D. Okla. Mar. 25, 2021) (unpublished) (finding a "vague argument" waived where the claimant did not "cite any records or develop this argument in any coherent manner"); *Salazar v. Colvin*, No. CIV-15-1097, 2016 U.S. Dist. LEXIS 97224, at *17 (W.D. Okla. July 26, 2016) (unpublished) (finding a claimant's argument regarding error in the RFC assessment waived where the claimant "states that the RFC was not supported by the evidence in the record, [but] he has not cited any portion of the record which he believes was not considered by the ALJ or would have supported more restrictive limitations").

[39] (*See* Opening Br. 5–6 (citing 20 C.F.R. § 404.1545).)

[40] (*Id.* at 4.)

[41] The argument section of Mr. O.'s opening brief contains only one citation to the record, but the citation is erroneous. Mr. O. cites "Wojciech Zolcik, MD. Pg. 440" for the following proposition: "He continues to follow his doctor's treatment plan and takes his prescribed medications, but his condition seems to either remain the same or negatively progress and with a GAF score of 55 he has not been able to manage it to the level where he could engage in substantial gainful work." (*See id.* at 5–6.) The page number

7

O.'s "statement of facts"[42] preceding his argument section likewise does not include citations for most of the factual assertions. It only includes citations to three portions of the record: a psychological consultative evaluation by Keith McGoldrick, PhD;[43] VA treatment records;[44] and a "mental health telephone encounter note" from Mark E. Manley, MD.[45]

Mr. O.'s arguments are so deficient as to justify a finding that he waived his challenge to the Commissioner's decision. Nevertheless, generously construing Mr. O.'s brief as arguing the ALJ's RFC assessment is unsupported by substantial evidence, the undersigned considers this issue on the merits. This approach is also justified by Mr. O.'s citation to at least some record evidence in the fact section of his opening brief.

Mr. O. fails to develop any other argument sufficiently to permit meaningful judicial review. For example, while Mr. O. claims the ALJ "applied improper legal standards,"[46] he does not further explain this argument or identify the legal standards improperly applied. Accordingly, this argument is waived. Mr. O. also raises new

---

cited is a medical record from a different provider (Dr. Mark Manley) and addresses a "profanity-laced phone message" from the claimant. (*See* Tr. 440.) It contains no reference to a GAF score, compliance with prescribed medication, or other subject matter addressed in the sentence for which it is cited. In his reply brief, Mr. O. cites the same page, but for the correct proposition. (Reply Br. 5, Doc. No. 26.)

[42] (*See* Opening Br., Doc. No. 19 at 1–4.)

[43] (*See id.* ¶ 11 (citing Tr. 384–89).)

[44] (*See id.* ¶ 12 (citing Tr. 314–40).)

[45] (*See id.* ¶ 13 (citing Tr. 440).)

[46] (*Id.* at 4.)

contentions of error in his reply brief (not raised in the opening brief).[47] Where Mr. O. raised these arguments for the first time in his reply, he has waived them.[48]

B. RFC Assessment

A claimant's RFC reflects the most he can do in a work setting considering his limitations.[49] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[50] The ALJ considers all relevant medical and other evidence in the record.[51]

Mr. O. argues "evidence from Dr. Zolcik, Dr. McGoldrick, and Dr. Adams, as well as lengthy notes of medical treatments from George Wahlen VAMC" demonstrate that he has "serious and persistent mental disorders," including general anxiety disorder, major depressive disorder, PTSD, and ADHD.[52] In the fact section of his brief, Mr. O.

---

[47] For example, Mr. O. argues for the first time in his reply brief that he meets the requirements of various mental health disorder listings, (*see* Reply Br. 4, Doc. No. 26), and that the ALJ erred in finding he could perform jobs existing in significant numbers in the national economy, (*see id.* at 2).

[48] *See Burke v. Regalado*, 935 F.3d 960, 995 (10th Cir. 2019) ("The failure to raise an issue in an opening brief waives that issue." (citation omitted)); *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

[49] *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[50] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[51] *See* 20 C.F.R. § 404.1545(a)(3).

[52] (Opening Br., Doc. No. 19 at 4–5.)

cites a psychological consultative evaluation by Dr. McGoldrick[53] and medical records from the George E. Wahlen VA Medical Center[54] (which include treatment records from Dr. Zolcik and Dr. Adams) to support the proposition that he has been diagnosed with these conditions. Mr. O. contends these conditions are "debilitating and cause[] a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life."[55] He also contends that "[m]entally, he would be unable to respond appropriately to co-workers and work pressures in a work setting on a consistent basis."[56]

As an initial matter, the ALJ credited these diagnoses and found these conditions qualified as severe impairments.[57] However, these diagnoses do not, on their own, establish disability.[58] "Rather, [the condition], alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment."[59] Thus, to the extent Mr. O. suggests these diagnoses were sufficient, standing alone, to support a finding of disability, this argument fails.

---

[53] (*See id.* ¶ 11 (citing Tr. 384–89).)

[54] (*See id.* ¶ 12 (citing Tr. 314–40).)

[55] (*Id.* at 4.)

[56] (*Id.* at 5.)

[57] (*See* Tr. 18.)

[58] *See Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (unpublished) ("The mere diagnosis of a condition does not establish its severity or any resulting work limitations.").

[59] *Id.* (alteration in original) (quoting *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)).

The record shows the ALJ considered both the medical evidence Mr. O. referenced and these mental impairments in assessing Mr. O.'s RFC.  The ALJ acknowledged Mr. O.'s history of treatment for general anxiety disorder, major depressive disorder, PTSD, and ADHD.[60]  Citing Dr. McGoldrick's evaluation and VA treatment records, the ALJ noted Mr. O.'s depression and anxiety "were generally described as moderate, with [Mr. O.] exhibiting irritability and a lack of focus, and reporting to providers daily panic attacks and difficulty sleeping."[61]  But the ALJ also noted VA treatment records showed Mr. O.'s depression and anxiety were "significantly improved by taking his medication, as well as by positive events, such as purchasing a new home," and that "outside of abnormal mood and affect," his mental status examinations were often normal.[62]  Based on this evidence, the ALJ concluded Mr. O.'s "anxiety [with] panic attacks, depression, and lack of focus would reasonably reduce [his] ability to handle complex or detailed tasks, thus limiting him to simple work."[63]  Further, Mr. O.'s "anxiety, depression and irritability support limited social interaction, to include a need to work independently."[64]  Overall, the ALJ found Mr. O. had the RFC to

---

[60] (Tr. 23.)

[61] (*Id.* (citing Tr. 384–90 (Dr. McGoldrick's consultative examination, labeled Exhibit 3F in the ALJ's decision); Tr. 485, 489 (2020–2021 VA treatment records, labeled Exhibit 4F, at pp. 95, 99)).)

[62] (*Id.* (citing Tr. 321–22, 328, 331, 333, 336 (2018–2019 VA treatment records, labeled Exhibit 1F, at pp.10–11, 17, 20, 22, 25); Tr. 436, 444, 467, 482–83, 487, 489, 498, 501, 511 (2020–2021 VA treatment records, labeled Exhibit 4F, at pp. 46, 54, 77, 92–93, 97, 99, 108, 111, 121); Tr. 520 (Consultative Examination by Dr. Jordan March, labeled Exhibit 5F, at p. 4)).)

[63] (*Id.*)

[64] (*Id.*)

perform "simple, routine and repetitive tasks"; to occasionally interact with supervisors and coworkers; to "work in proximity to others, but [] work alone, not on a team"; and "interact superficially with the public."[65]

Mr. O. has not demonstrated error in these findings. The ALJ's description of the medical records is accurate, and the cited records support his findings. For example, the medical records include: an assessment of Mr. O.'s depression as "moderate";[66] multiple reports that medication significantly improved Mr. O.'s symptoms;[67] and numerous normal mental status examinations.[68] These records constitute substantial evidence (more than a "mere scintilla") to support the ALJ's mental RFC determination. Indeed, Mr. O. fails to explain how the ALJ's assessment conflicts with the medical evidence Mr. O. references. And even if the record contains some evidence supporting greater limitations, the court will not reweigh the evidence where substantial evidence supports the ALJ's findings.[69]

In addition to medical evidence, Mr. O. refers to his own hearing testimony and a function report completed by his mother—although he fails to include citations to the

---

[65] (Tr. 22.)

[66] (Tr. 492.) The record also contains treatment records rating Mr. O.'s depression as "moderate to severe," (Tr. 512), and "moderately severe," (Tr. 337).

[67] (Tr. 385 (noting Mr. O. reported decreased panic attacks while sleeping due to medication); Tr. 485–86 ("[Mr. O.] reports a tremendous difference since Adderall was started. He says that he is able to focus and his anxiety is completely gone. Prior to that, he was having panic attacks every day."); Tr. 489 (noting Mr. O. reported feeling "more control of his panic attacks" with medication).)

[68] (Tr. 321–22, 331, 333–34, 336.)

[69] *See Langley*, 373 F.3d at 1118.

record.[70]  Mr. O. asserts he testified about "mental health outbursts" and "anxiety and PTSD anxiety [sic] attacks which render him helpless for numerous hours at a time."[71] And Mr. O. indicates his mother described him losing his temper on a consistent basis around family members.[72]

The record shows the ALJ considered both Mr. O.'s hearing testimony regarding his limitations in mental functioning and the function report completed by Mr. O.'s mother.  The ALJ specifically noted that Mr. O. testified to difficulty with "memory, completing tasks, concentration and getting along with others," as well as "panic attacks, depression, fatigue, low motivation, [and] forgetfulness."[73]  The ALJ found that although Mr. O.'s impairments could reasonably be expected to cause the alleged symptoms, Mr. O.'s statements regarding the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[74]  This analysis reflects the correct legal standard for evaluating a claimant's self-reported symptoms.[75]  And the ALJ's finding that Mr. O. was not as

---

[70] (*See* Opening Br., Doc. No. 19 at 6.)

[71] (*Id.*)

[72] (*See id.*)

[73] (Tr. 22.)

[74] (Tr. 22–23.)

[75] *See* SSR 16-3p, 2016 SSR LEXIS 4, at *2–3 (Mar. 16, 2016) ("[W]e consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."); *see also* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.  There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other

limited as he claimed is supported by substantial evidence, including the medical evidence described above.  The ALJ also cited and discussed the function report completed by Mr. O.'s mother in the portion of the decision addressing whether Mr. O.'s impairments medically equaled a listed impairment.[76]  This shows the ALJ considered the function report; nothing further was required.[77]  Mr. O.'s reference to the hearing testimony and function report amounts to nothing more than an improper request for the court to reweigh the evidence.

    While Mr. O.'s arguments focus on mental impairments, Mr. O. also briefly mentions physical conditions including low back pain, cervicalgia, chronic pain syndrome, dermatitis, hip pain, knee pain, and tinnitus.[78]  He also asserts that "[p]hysically, he is unable to engage in any kind of work requiring moderate or heavy lifting, extended periods of time on his feet, or anything requiring a stable level of wellness."[79]  However, Mr. O. fails to cite any record evidence supporting his assertions regarding physical conditions and limitations.  He also fails to explain how his claimed physical limitations conflict with the ALJ's physical RFC assessment, which limited

---

symptoms alleged . . . .  We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.").

[76] (Tr. 20–21 (citing Tr. 248–60 (Function Report, labeled Exhibit 4E)).)

[77] *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

[78] (*See* Opening Br., Doc. No. 19 at 5.)

[79] (*Id.*)

Mr. O. to "light" work with additional exertional and postural limitations.[80] In any event, the ALJ's physical RFC findings are supported by substantial evidence, including treatment records,[81] Mr. O.'s self-reported activities,[82] and medical opinion evidence from a physical consultative examiner.[83] Mr. O. has demonstrated no error in the ALJ's physical RFC assessment.

In sum, the ALJ's RFC findings are supported by substantial evidence in the record, and Mr. O. has demonstrated no error in the ALJ's RFC assessment.

## RECOMMENDATION

Because the ALJ's RFC findings are supported by substantial evidence, and all other challenges to the Commissioner's decision are waived based on Mr. O.'s failure to

---

[80] (*See* Tr. 22); *see also* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").

[81] (*See* Tr. 23 ("Initial [physical therapy] evaluation showed a grossly normal gait, with the ability to lift forty pounds with minimal pain, and through therapy and exercise he improved function and reduced his pain. For example, PT increased his function to deadlifting 115 pounds, sitting comfortably for one hour, and being able to walk one mile without pain; he later reported being able to at least lift forty pounds and walk a half mile." (citing Tr. 354, 364, 378, 382 (labeled Exhibit 2F, at pp. 4, 14, 28, 32); Tr. 498 (labeled Exhibit 4F, at p.108); Tr. 517–22 (Consultative Examination by Dr. Jordan March, labeled Exhibit 5F))).)

[82] (*See id.* (noting Mr. O.'s reported activities included drywalling and sanding his son's room, working with pallets of wood in his garage, and working on his house and yard" (citing Tr. 364 (labeled Exhibit 2F, at p. 14); Tr. 489, 498 (labeled Exhibit 4F, at pp. 99, 108))).)

[83] (*See* Tr. 24 (noting the consultative examiner found Mr. O. "able to generally perform light exertion, with limited use of the left upper extremity, and postural limitations," and finding this opinion persuasive); Tr. 517–22 (Consultative Examination by Dr. Jordan March, labeled Exhibit 5F).)

present developed arguments in his opening brief, the undersigned RECOMMENDS the district judge AFFIRM the Commissioner's decision.

The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[84]

DATED this 8th day of January, 2025.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[84] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).